IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSE ANNA PARK, | ) | CASE NO. 1:25-cv-02217-RJS |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY | ) | **AND ORDER** |
| Defendant. | ) | |

## I.  Introduction

Plaintiff Rose Anna Park ("Park") seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This matter is before me under 42 U.S.C. §§ 405(g), and 1383(c)(3). The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c)(1). (ECF Doc. 3). Because the Administrative Law Judge ("ALJ") applied proper legal standards, the Commissioner's final decision denying Park's application for DIB is affirmed.

## II.  Procedural History

Park filed for DIB on May 2, 2023, initially alleging a disability onset date of March 6, 2007. (Tr. 751-52[1]). The claims were denied initially and on reconsideration. (Tr. 640, 656). Park then requested a hearing before an ALJ. (Tr. 66□-□). Park, represented by counsel, and a vocational expert ("VE") testified before the ALJ on August 29, 2024. (Tr. 47). On October 17, 2024, the ALJ issued a written decision finding Park not disabled. (Tr. 15-41). The Appeals

---

[1] Transcript citations throughout the opinion are to the supplemental transcript filed on February 5, 2026. (*See* ECF Doc. 8).

1

Council denied the request for review on August 21, 2025, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see* 20 C.F.R. §§ 404.955, 404.981).

Park timely filed this action on October 16, 2025. (ECF Doc. 1). She asserts two assignments of error:

1. The ALJ erred when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.

2. At Steps Four and Five of the Sequential Evaluation, the ALJ's finding that Plaintiff could perform work at the light level of exertion was not supported by substantial evidence.

(ECF Doc. 9, p. 1).

### III. Evidence

#### A. Personal, Educational, and Vocational Evidence

Park was 53 at the date last insured, making her an individual closely approaching advanced age. (Tr. 41). She graduated from high school. (*See* Tr. 800).

The ALJ found Park had no past relevant work because she had not performed qualifying work during the relevant five-year period before her December 31, 2012 date last insured. (Tr. 39).

#### B. Relevant Medical Evidence

Prior to the relevant period, Park underwent a lumbar MRI on January 17, 2008, which showed slightly increased disc bulging at L4 with development of mild central stenosis, suspected mild focal compression of the left L5 nerve root at L4-5, and moderate narrowing of the right L4 foramen. (Tr. 145-50). The same day, an MRI of the cervical spine demonstrated multilevel cervical spondylosis with no cord compression or high-grade foraminal stenosis, and congenital fusion at C2-3. (*Id.*). An earlier May 14, 2007 lumbar MRI was positive for mild to

moderate spondylosis, with the most significant findings at L4-5, including mild narrowing of the right lateral recess affecting the right L5 nerve root. (Tr. 166).

On May 22, 2010, Park attended a consultative psychological examination with Wayne Edwards, M.D. (Tr. 182). Park reported to Dr. Edwards that she feels depressed around 70% of the time, has no motivation, and cries approximately once per month. (*Id.*). Park reported she has been struggling with these issues for about four years. (*Id.*). He assessed a Global Functioning Assessment score of 65 to 70. (Tr. 187). In his diagnostic impression, Dr. Edwards noted Park's symptoms were consistent with pain disorder with psychological features and depressive disorder. (Tr. 186).

On August 4, 2010, Park attended a consultative physical examination with David Winkle, M.D. (Tr. 203). On examination, Dr. Winkle found no significant loss of strength, no gait disturbance, and he recorded a largely preserved range of motion, aside from reduced right-sided rotation to only 65 degrees. (Tr. 205-06).

During the relevant period, Park was treated by Michael Paul, M.D., for fibromyalgia, back pain, neck pain, shoulder pain, headaches associated with greater occipital neuralgia, and related complaints. (Tr. 354-61). In an office visit with Dr. Paul on March 21, 2011, Park reported her back pain was tolerable, she had minimal headaches, and the Tramadol prescribed helped with her fibromyalgia pain. (Tr. 357). Dr. Paul prescribed both Tramadol and Oruvail. (*Id.*).

On May 31, 2011, she reported to Dr. Paul she was having episodes of severe headaches in the occipital region, but the Tramadol still helped her pain. (Tr. 358). She also described still having occasional shoulder and neck pain. (*Id.*).

In an appointment with Dr. Paul on September 1, 2011, Park reported she still had three major headaches a week, along with sporadic right shoulder pain. (Tr. 358-59). Dr. Paul continued Tramadol and Oruvail. (*Id*.). At an October 5, 2011 appointment, Park reported feeling a little depressed and having severe fibromyalgia symptoms, but she also reported headaches were not as bad as they were previously. (Tr. 359). Dr. Paul prescribed Valium, in addition to continuing the Tramadol and Oruvail prescriptions. (*Id*.).

In a later office visit on October 19, 2011, Park reported she was still miserable, but things were a little more tolerable because Valium helped her irritability. (Tr. 360). Dr. Paul noted she had no headaches, but she still had right shoulder pain and pain in the right elbow, forearm, and hand. (*Id*.).

On November 29, 2011, Park reported that she was feeling better, her right scapula pain was improved, and she had minimal headaches. (Tr. 360). Park also reported that pain in her right forearm was starting to return. (*Id*.). Dr. Paul continued to prescribe Tramadol. (Tr. 361).

During a January 10, 2012 office visit with Dr. Paul, Park reported she had been feeling a lot better. (*Id*.). She had minimal neck pain and no back pain. (Tr. 361). Dr. Paul noted she still had tenderness on her right elbow. (*Id*.).

On a March 1, 2012 visit with Dr. Paul, her last visit during the relevant period, Park reported right knee pain but no right elbow pain. (*Id*.). She also reported lower back pain. (*Id*.). On exam, Dr. Paul reported minimal discomfort in the lumbar spine, and some tenderness on examination of the right knee. (*Id.*).

### C. Medical Opinion Evidence

#### 1. Treating Source Statement

Before the relevant period, in May 2010, Mofi Wright, M.D., completed a form stating Park was unable to work due to degenerative joint disease, numbness, and tingling, and positive spasms. (Tr. 181). Dr. Wright marked Park's response to treatment as "good." (*Id.*).

#### 2. Consultative Examinations

Before the relevant period, on August 4, 2010, Dr. Winkle conducted a consultative examination. (Tr. 203). Dr. Winkle opined Park would be impaired with restrictions for heavy lifting, bending, stooping, prolonged walking, and prolonged standing. (*Id.*). He also noted Park would need to be near a bathroom for her irritable bowel syndrome ("IBS"). (*Id.*).

On May 22, 2010, also before the relevant period, Dr. Edwards completed a psychological examination and diagnosed pain disorder and depressive disorder. (Tr. 187). Dr. Edwards stated Park appeared to be able to do simple work-related tasks. (*Id.*). Further, Dr. Edwards noted Park appeared to possess appropriate understanding and remembering capabilities. (*Id.*). He also opined Park appeared to be able to work eight hours a day, five days a week without significant supervision, and she could further improve with treatment. (*Id.*).

#### 2. State Agency Medical Reviewers

State agency psychological consultants, Kristin Haskins, Psy.D., and Maria Yapondiian-Alvarado, Psy.D., found that Park's mental impairments caused no more than mild limitations. (Tr. 620, 630). On September 27, 2023, Dr. Haskins opined Park had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. (Tr. 620). Similarly, on February 6, 2024, upon reconsideration, Dr. Yapondiian-Alvarado also opined Park

5

had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. (Tr. 629-30).

State agency medical consultants Diane Manos, M.D., and Laura Rosch, D.O., found insufficient evidence to assess physical limitations for the period through the date last insured. (Tr. 619, 628-29). On September 21, 2023, Dr. Manos opined the records did support allegations of cervical and lumbar degenerative disc disease, bilateral knee osteoarthritis, hypertension, and hypothyroidism. However, she opined fibromyalgia was not a medically determinable impairment during the period. (Tr. 619). She also noted both IBS and numbness were not medically determinable during the period because the records do not show diagnosis until after the date last insured of December 31, 2012. (*Id.*). Likewise, upon reconsideration on February 12, 2024, Dr. Rosch also found insufficient evidence to conclude fibromyalgia was a medically determinable impairment during the relevant period, and found the only medically determinable impairments were cervical and lumbar degenerative disc disease, bilateral knee osteoarthritis, hypertension, and hypothyroidism. (Tr. 629).

### D.      Administrative Hearing Evidence

 Park testified before an ALJ on August 29, 2024. (Tr. 49-71). She is a high school graduate. (Tr. 58). Park last worked in 2007. (*Id.*). Park testified during the relevant period she lived with her boyfriend, who is now her husband, in Maryland and Kentucky. (*Id.*). They mostly lived in Maryland together, but they would often commute to Kentucky. (*Id.*). Park testified her boyfriend would drive, but she was able to drive some. (*Id.*). She further explained on these drives, she would have to get out for a break every hour or so to move around. (Tr. 67).

Park testified that during 2011 and 2012, she had back issues, bowel problems caused by IBS, and fibromyalgia. (Tr. 58-59). She testified she previously received injections for her back pain but went to a doctor who was just medicating due to a lack of health insurance. (Tr. 59). She also explained that no one suggested surgery. (*Id*.).

Park testified she could stand for approximately thirty minutes if she was not on concrete and could walk for about 15 minutes. (Tr. 60-61). She opined that cervical spine pain radiated to her right hand, and she had difficulty shaking hands, was unable to open jars, and would likely be unable to pull a full gallon of milk and walk it into the next room. (Tr. 62). Park also testified she had fibromyalgia pain in her legs all the way from her waist to her feet. (Tr. 63).

Park testified her hypertension was controlled with medicine. (Tr. 64). She also testified she had IBS and took medication to prevent her from having major episodes, but she still struggled with it. (Tr. 65). She testified that on a bad day, she would use the bathroom around every ten minutes, and on a better day, she would still go to the bathroom five to six times a day. (Tr. 65-66).

Park opined her conditions made it difficult for her to sleep, and she estimated she was only able to get around three hours of sleep a night. (Tr. 66). She also testified she had some depression during the relevant period, but did not seek treatment due to stigma. (Tr. 67).

On questioning by her attorney, Park testified she would have a headache daily around either 2011 or 2012. (Tr. 68). Park could not recall whether she took any medications for these headaches. (*Id*.).

Once Park completed her testimony, VE Thomas Nimberger testified. (Tr. 71-80). For his first hypothetical, the ALJ asked the VE to consider an individual of Park's age, educational, and vocational background who could perform light work with additional restrictions, including no

7

climbing, ladders, ropes, or scaffolds; occasional climbing ramps or stairs; occasional stooping, crouching, kneeling, and crawling; frequent reaching bilaterally; frequent handling with the right upper extremity; occasional exposure to the extreme cold and vibration; no exposure to hazards such as unprotected heights, dangerous moving parts and commercial driving. (Tr. 73). The VE testified such an individual could perform work as an office cleaner, DOT 323.687-014, with 200,000 jobs nationally; cashier, DOT 211.462-010, with 500,000 jobs nationally; and marker, DOT 209.587-034, with 129,000 jobs nationally. (Tr. 73-74).

For his second hypothetical, the ALJ asked the VE to consider all of the same limitations except that the individual could only handle items with their upper right extremity occasionally. (Tr. 74). The VE opined the second hypothetical would be close to preclusion. (*Id*.).

For his third hypothetical the ALJ asked the VE to add the following non-exertional limits to the first hypothetical: the individual would not be able to perform tasks which required a high production rate; the individual could only interact on an occasional basis with the general public; and the individual could respond appropriately to only occasional changes in a routine work setting. (Tr. 74). The VE responded the marker job and the office cleaner job would still be available; however, the cashier job would be eliminated. (Tr. 73-74). On questioning by the ALJ, VE Nimberger responded the cashier job could be replaced by a job such as a food service worker, DOT 311.677-010[2]. (Tr. 75).

The ALJ then asked the VE if unscheduled bathroom breaks would be tolerated. (Tr. 77). The VE testified a bathroom break every hour for five minutes would not be allowed beyond a

---

[2] The VE did not testify about the exertion level and the number of jobs available in the national economy for the food service worker job. However, the third hypothetical did not reflect the ALJ's final RFC determination, as Park's RFC does not include limits on tasks requiring a high production rate; interactions with the general public; and the ability to handle to only occasional changes in a routine work setting. (*See* Tr. 30, 74).

8

day or two. (Tr. 77-78). The VE also opined if the hypothetical individual were limited to occasional reaching instead of occasional handling that there would be no jobs available. (Tr. 79).

**IV.        The ALJ's Decision**

In his decision dated October 17, 2024, the ALJ made the following findings:

1.       The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2.       The claimant did not engage in substantial gainful activity during the period from February 3, 2011 through the date last insured of December 31, 2012 (20 CFR 404.1571 et seq.).

3.       Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine and cervical spine, osteoarthritis of the bilateral knees, fibromyalgia, and hypertension (20 CFR 404.1520(c)).

4.       Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.        After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except that she was further limited in the following nonexertional respects:
   - Could never climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs, and could occasionally stoop, crouch, kneel, and crawl;
   - Could frequently reach with the bilateral upper extremities, and could frequently handle with the right upper extremity; and
   - Could have only occasional exposure to extreme cold and to vibrations, but needed to avoid all exposure to hazards such as unprotected heights and dangerous moving mechanical parts, and could not perform any commercial driving.

6.       The claimant has no past relevant work (20 CFR 404.1565).

7.      The claimant was born on September 21, 1959 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education (20 CFR 404.1564).

9.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10.     Through the date last insured, considering the claimant's age, education, no work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from February 3, 2011, the day after the date of a period subject to the prior ALJ's decision on review currently with a Federal court, through December 31, 2012, the date last insured (20 CFR 404.1520(g)).

(Tr. 23-41).

## V.      Law & Analysis

### A.      Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.      whether the claimant is engaged in substantial gainful activity;

2.      if not, whether the claimant has a severe impairment or combination of impairments;

3.      if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.      if not, whether the claimant can perform their past relevant work in light of his RFC; and

5.      if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears

the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Standard of Review

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial

11

right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007).

**VI.**      **Discussion**

Park raises two issues for this Court's review:

1.      Whether the ALJ properly applied the criteria of Social Security Ruling 96-8p and considered all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation?

2.      Whether the ALJ's finding at Parts Four and Five was supported by substantial evidence?

(ECF Doc. 9, p. 1).

**A.      The ALJ properly evaluated Park's impairments and supported the RFC with substantial evidence**.

Park first argues the ALJ failed to properly apply Social Security Ruling ("SSR") 96-8p by failing to consider all her impairments and related limitations. (*Id*. at p. 8). Park contends that the ALJ failed to include necessary limitations in the RFC relating to her complaints of IBS, headaches associated with greater occipital neuralgia, and shoulder pain. Without consideration of these complaints, Park asserts that, contrary to SSR 96-8p, the ALJ failed to consider the

totality of Park's symptoms and limitations when forming the RFC and thus failed to support the RFC with substantial evidence. (*Id*.).

The Commissioner responds by arguing the ALJ's findings were in line with the applicable regulations and SSR 96-8p, and substantial evidence supports the ALJ's evaluation of Park's symptoms. (ECF Doc. 10, pp. 9-10). The Commissioner notes the ALJ spent nine pages explaining his RFC assessment and considered objective medical evidence and other evidence in the record. (*Id*. at p. 10).

Generally, the ALJ is responsible for assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c*)*; *Pitrman v. Comm'r of Soc. Sec.*, No. 3:15-cv-1503, 2023 WL 3510752, *13 (N.D. Ohio Apr. 10, 2023). The RFC is an assessment of a claimant's ability to work despite her impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011), citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p. In so doing, before proceeding to Step Four of the sequential analysis, the ALJ determines a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p. Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a); *see also* SSR 96-8p.

SSR 96-8p further advises that an ALJ's RFC analysis should discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p.

Here, the ALJ complied with SSR 96-8p. The ALJ expressly found that Park had severe impairments of degenerative disc disease of the lumbar spine and cervical spine, osteoarthritis of

13

the bilateral knees, fibromyalgia, and hypertension. (Tr. 24). He also considered non-severe impairments, including irritable bowel syndrome, greater occipital neuralgia, and depressive disorder and pain disorder with psychological features. (Tr. 25, 28).

Park argues while the ALJ listed the aforementioned impairments, he nonetheless failed to include any limitations related to her symptoms in the RFC. (ECF Doc. 9, p. 11). Park raises issue with an "incorrect" statement from the ALJ, where he described Park as having limited complaints about her headaches. (*Id*.). The ALJ, however, did note the severity of Park's headaches: "In September 2011, Ms. Park did voice a complaint of severe headaches of greater occipital nerve location, which . . . did not receive any separate medication or other treatment[.]" (Tr. 35). The ALJ did not include additional limitations in the RFC because Park reported her headaches were no longer as severe in an October 2011 visit with Dr. Paul, and she never required any separate medication or treatment for the headaches. (*Id*.). The ALJ therefore reasonably concluded the headache evidence did not require additional restrictions in the RFC and supported his decision with substantial evidence.

Park further claims the ALJ failed to consider her shoulder pain. (ECF Doc. 9, p. 12). However, the ALJ did include upper extremity limitations: Park was limited to frequent reaching with both upper extremities and frequent handling with the right upper extremity. (Tr. 30). The ALJ explained more restrictive limitations were not supported because the medical evidence showed only minimally tender right scapula, and Park reported to Dr. Paul in a September 2011 visit, she only had occasional right-sided shoulder pain which goes away an hour after onset. (Tr. 35).

Park also raises the failure to include bathroom breaks in the RFC as indicative of the ALJ not considering her impairments. (ECF Doc. 9, p. 12). Here though, the ALJ acknowledged

Park's history of IBS but explained the record did not show presenting complaints of IBS symptoms in the treatment notes, nor is there evidence in the record Park pursued medical evaluation or treatment for IBS during the relevant period. In explaining the determination of the RFC, the ALJ wrote:

> In fact, she reported her general health as "satisfactory" as of March 2011 (Ex. 17F/5), which one would not expect to be endorsed by a patient who, as alleged, even with the use of two medications was still in the restroom five to six times per day on "good days," and every 10 minutes on "bad days." In fact, I find no listed prescription of any IBS-directed medication(s) by Dr. Michael over the entire August 2010 March 2012 documented period of treatment, and there appears no indication of a concurrent treating source of this condition. In short, the record fails to substantiate any IBS symptoms or impact on physical or other work-related functioning over the period through the date last insured.

(Tr. 36). The ALJ further explained Dr. Winkle's bathroom-proximity statement predates the relevant period and was based largely on Park's subjective report rather than clinical findings from the examination, so he found the opinion not persuasive. (Tr. 38). Thus, the ALJ's decision not to include extra bathroom breaks or a requirement to be near a bathroom was supported by substantial evidence.

Park also relies on VE testimony that additional limitations would be work preclusive or nearly so, including extra bathroom breaks, occasional reaching in all directions, or only occasional right upper extremity use. (ECF Doc. 9, p. 12). However, an ALJ is only required to incorporate limitations he accepts as credible and supported by the record. *See Casey v. Sec'y of Health Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The VE's answers to hypothetical questions involving limitations the ALJ reasonably rejected do not establish reversible error.

In short, the ALJ did not fail to properly apply SSR 96-8p. He identified Park's severe and non-severe impairments, considered Park's conditions and limitations, and explained why the evidence supported his RFC determination rather than the additional limitations Park asserts

15

in her brief. Therefore, the ALJ's decision cannot be overturned on this basis and must be affirmed.

> **B.** **The ALJ supported his RFC determination with substantial evidence to show Park could work at the light exertional level**.

Park raises error with the ALJ's RFC determination when he failed to find that she needed to be restricted to sedentary work. (ECF Doc. 9, p. 1). She correctly states that at Step Four Plaintiff has the burden to prove she cannot perform any past relevant work, and at Step Five the ALJ has the burden to demonstrate there is work in the national economy that the claimant can perform, given their residual functional capacity. (*Id*. at pp. 13-14). To support her argument, Park raises Dr. Winkle, Dr. Wright, and Dr. Edwards' opinions and lumbar and cervical spine imaging. (*Id*. at pp. 15-16). Park states the evidence in the record corroborates that she could not perform work at the light level of exertion, thus supporting her contention a finding of disabled was required by Grid Rule 201.12. (*Id*. at p. 16).

In contrast, the Commissioner compares the evidence in the record against the ALJ's determination to demonstrate that the RFC was reasonable and responsive to Park's limitations. (ECF Doc. 10, pp. 9-14). And while Park may point to evidence supportive of a finding of disability, the ALJ relied on those same records to find Park was not disabled. (*Id*. at pp. 13-14). The Commissioner points out that Park may disagree with the ALJ's weighing of the evidence, but this is not enough. (*Id*. at p. 14). Rather, it amounts to a request for this Court to reweigh the evidence, which it may not do. (*Id*.).

"[T]he regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC based on all of the relevant medical and other evidence of record.'" *Harris v. Comm'r of Soc. Sec.,* No. 1:13-cv-00260, 2014 WL 346287, at \*11 (N.D. Ohio, Jan. 30, 2014). An ALJ must "provide a coherent explanation of his

reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 20 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), report and recommendation adopted sub nom., *Lester v. Comm'r of Soc. Sec.,* No. 5:20-cv-01364, 2021 WL 119287 (N.D Ohio, Jan. 13, 2021).

Despite Park stating her second argument as both a Step Four and Five error, my review of her argument discloses that it centers on the RFC determination. Park argues "the ALJ's determination that she could perform work at that level of exertion was not supported by substantial evidence requiring a reversal or remand of this matter." (ECF Doc. 9, p. 15). As such, Park retains the ultimate burden of proving she has a medically determinable impairment that is of sufficient severity as to prevent gainful activity. *See Combs*, 459 F.3d at 642-43. However, "[c]iting selective portions of the record that support one's own conclusion does not meet this burden." *Hollinger v. Comm'r of Soc. Sec.*, No. 1:23-CV-00418-BYP, 2024 WL 310715, at *9 (N.D. Ohio Jan. 11, 2024), report and recommendation adopted, No. 1:23-CV-418, 2024 WL 310092 (N.D. Ohio Jan. 26, 2024). Rather, where a plaintiff disagrees with the ALJ's analysis of her limitations, she must meet the burden of showing specifically how her impairment limits her to a degree inconsistent with the ALJ's RFC determination. *Id*.

Park first points to the lumbar and cervical spine imaging to support a finding she could only work at the sedentary work level. (ECF Doc. 9, p. 15). However, the ALJ relied on this evidence when making his RFC determination. (Tr. 32-33, 36, 39). When determining Park could work at the light exertion level and not the medium exertion level, the ALJ accounted for the abnormal MRI findings to counter a previous state agency reviewer's finding that Park could perform work at the medium exertion level. (Tr. 39). While Park does not explain how these findings support a sedentary finding, it is clear the ALJ considered the imaging and reasonably found the record did not establish limitations reducing her to sedentary work.

17

Park also relies on Dr. Wright's May 2010 statement that she was unable to work. (ECF Doc. 9, p. 15). The ALJ addressed that statement and reasonably found it unpersuasive. (Tr. 33, 38) Dr. Wright's conclusion that Park could not work was a statement on an issue reserved to the Commissioner. *See* 20 CFR 404.1520b(c)(3). Nor did the statement provide an assessment explaining how Park specifically was limited by her impairments. The ALJ did not err by declining to adopt Dr. Wright's conclusion as requiring a sedentary finding.

Park next relies on Dr. Winkle's consultative opinion. (ECF Doc. 9, pp. 15-16). Dr. Winkle opined that Park would be impaired with heavy lifting, bending/stooping, prolonged standing and prolonged walking, ascending steps, and turning her neck; and that, due to her irritable bowel syndrome, she would need to be near a bathroom in a work setting. (Tr. 206). Nonetheless, the ALJ provided several reasons why he did not find the opinion persuasive. The ALJ noted that Dr. Winkle's terms were vague, including "heavy" lifting and "prolonged" standing. (Tr. 38). The ALJ also found the opinion inconsistent with Dr. Winkle's own examination, which showed full lower extremity strength, full range of motion in the major joints, dorsolumbar spine, cervical spine/neck, aside from some decreased right-sided cervical spine mobility. (*Id.*). Dr. Winkle's opinion did not compel a sedentary RFC.

Park also points to Dr. Edwards' psychological opinion to direct a sedentary finding. (ECF Doc. 9, p. 15). It is unclear, though, how his opinion supports a sedentary finding. Dr. Edwards' opinion focused solely on Park's mental capabilities and did not address her physical ability to perform work at any level of exertion. (Tr. 188). Therefore, Dr. Edwards' opinion did not require the ALJ to find Park could only work at the sedentary exertion level.

It is clear the ALJ gave thoughtful consideration to the evidence in the record before determining Park's RFC. He rejected the state agency findings that there was insufficient

18

evidence to assess physical limitations, found fibromyalgia to be a medically determinable severe impairment, and imposed more restrictive limitations than those suggested by the prior administrative agency finding. (Tr. 24, 37-39). The ALJ limited Park to light exertion, with additional restrictions on climbing, postural activities, reaching, handling, environmental exposures, hazards, and commercial driving. (Tr. 30). The ALJ provided substantial evidence to support the limitations imposed by the RFC, and considered the medical evidence, including the lumbar and cervical imaging, as well as the medical opinions. While Park does provide examples of evidence that could lead to an alternate RFC, I concur with the Commissioner's argument that consideration of these examples amounts to an invitation to reweigh the evidence, and such second-guessing is beyond this Court's purview. Accordingly, I affirm the Commissioner's decision as to Issue Two.

## VII.        Conclusion

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I affirm the Commissioner's final decision denying Park's application for DIB.

 Dated: July 14, 2026

Reuben J. Sheperd
United States Magistrate Judge

19